## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESSICA ENGLE, | : | CIVIL NO: 1:20-CV-00463 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJIKAZI,[1] | : | |
| Acting Commissioner of Social | : | |
| Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OPINION

### I.   Introduction.

This is a social security action brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  Plaintiff Jessica Engle ("Engle") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act.  We have jurisdiction under 42 U.S.C. §§ 405(g) and

---

[1] Kilolo Kijakazi is now the Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1383(c)(3).  For the reasons set forth below, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## II.    Background and Procedural History.

We refer to the administrative transcript provided by the Commissioner. *See docs. 11-1 to 11-26.*[2]  On June 4, 2014, Engle protectively filed[3] an application for Social Security disability benefits, alleging disability beginning June 4, 2014. *Admin Tr.* at 13.  Engle's claim was denied on September 13, 2014. *Id.*  Engle filed a written request for a hearing on October 7, 2014. *Id.*  She appeared and testified at an administrative hearing on July 25, 2016, in Harrisburg, Pennsylvania. *Id.*

On September 14, 2016, Administrative Law Judge Richard Guida ("ALJ") determined that Engle had not been disabled within the meaning of the Social Security Act from June 4, 2014 through the date of the decision. *Id.* at 23.  Benefits were denied accordingly. *Id.*  Engle appealed the ALJ's decision to the Appeals

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Engle's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-cv-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

Council, which denied her request for review on October 12, 2017. *Id.* at 1.  Engle

subsequently filed a civil action in the United States District Court for the Middle

District of Pennsylvania on November 29, 2017. *Id.* at 812.  Judge Mannion issued

an order on March 1, 2019, remanding the case back to the Commissioner of the

Social Security Administration. *Id.* at 842.  The Appeals Council vacated the final

decision of the Commissioner and remanded the case to an ALJ for further

proceedings. *Id.* at 860.  The same ALJ, Richard Guida, issued another unfavorable

decision on January 17, 2020. *Id.* at 728.  This makes the ALJ's January 17, 2020

decision the final decision of the Commissioner, and subject to judicial review by

this court.

Engle initiated this action on March 20, 2020, by filing a complaint claiming

that the ALJ's decision was "not supported by substantial evidence" and "is based

on the incorrect application of legal principles and the application of incorrect legal

principles." *Doc. 1.* at ¶ 13.  Engle requests that the court reverse the

Commissioner's decision at the administrative level below and award disability

and insurance benefits, or in the alternative remand the case to the Commissioner

for a new hearing or grant other such relief that this court would deem justified.

*Doc. 1* at ¶ 13(a)–(c).  The Commissioner filed an answer and a certified transcript

of the administrative proceedings that occurred before the Social Security

Administration. *Docs. 10, 11.*  The parties consented to proceed before a

3

magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 19*.  The parties have filed briefs, and this matter is ripe for decision. *Docs. 13, 14, 15*.

## III.   Legal Standards.

### A. Substantial Evidence Review—The Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict

created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's] finding

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*,

383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

*Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Engle is disabled,

but whether substantial evidence supports the ALJ's and Commissioner's findings

that she is not disabled and whether the Commissioner correctly applied the

relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.**

To receive benefits under Title XVI of the Social Security Act, a claimant

generally must be "unable to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §

416.905(a).  To satisfy this requirement, a claimant must have a severe physical or

mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

**IV.    The ALJ's Decision Denying Engle's Claim.**

On September 14, 2016, the ALJ determined that Engle was not disabled under §§ 216(i) and 223(d) of the Social Security Act through her last date insured and denied her claim for benefits. *Admin Tr.* at 746.  At step one of the sequential-evaluation process, the ALJ found that Engle had not engaged in substantial gainful activity since June 4, 2014, the alleged onset date. *Id*. at 733.  At step two of the sequential-evaluation process, the ALJ found that Engle had the following severe impairments: degenerative disc disease, fibromyalgia, obesity, degenerative joint disease, polyarticular arthritis, obsessive compulsive disorder, and panic disorder. *Id.* at 733–34.  At step three of the sequential-evaluation process, the ALJ found that Engle did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 735.

The ALJ then determined that Engle had the RFC to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b).[4] *Id.* at 739.

_____

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting

Specifically, the ALJ found that Engle was "limited to occasional postural movements except never use ladders, ropes, or scaffolds." *Id.* Engle was also limited to avoid "frequent overhead reaching, handling, and fingering bilaterally." *Id.* The ALJ also held that Engle was to avoid "concentrated exposure to hazards." Engle's work was to be "limited to simple and routine tasks involving only simple, work related decisions and with few, if any, work place changes, no production pace work and only occasional interaction with supervisors, co-workers, and the public." *Id.* In making this RFC assessment, the ALJ considered all of Engle's symptoms that could be accepted as consistent with the record evidence and medical opinions. *Id.*

Next, the ALJ determined that Engle was not capable of performing past relevant work as "an administrative secretary, . . . a medical assistant, . . . a teacher assistant," and a "server." *Id.* The ALJ found that these positions required the performance of work-related activities precluded by Engle's RFC. *Id.* In making this determination, the ALJ relied on the testimony of the vocational expert and the other evidence of record. *See id*. at 739–45. The ALJ concluded that Engle was a "younger individual" and her past work "include[d] semi-skilled and skilled work." *Id.* at 745.

---

factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. 404.1567(b).

Finally, the ALJ determined that after considering "the claimant's age, education, work experience, and residual functional capacity," there were jobs that existed in significant numbers in the national economy she was capable of performing. *Id.* at 745–46.  Some of these were as a "marker," a "garment sorter," or a "classifier, laundry related." *Id.*  In sum, the ALJ concluded that Engle was not disabled from June 4, 2014, through the date of his decision on August 25, 2020. *Id*.  Thus, the ALJ denied Engle SSI benefits. *Id*.

## V.   Discussion.

Engle presents three arguments in support of her position.  Engle first argues that the ALJ erred in his RFC assessment because he failed to properly weigh the opinions of treating rheumatologist Dr. Francis Gallagher ("Gallagher"). Additionally, Engle contends that substantial evidence does not support the ALJ's RFC assessment.  Finally, Engle asserts that the ALJ made multiple errors regarding symptom evaluation, compelling reversal.

Because Engle's claims concern the ALJ's handling of opinion evidence, we start with a brief overview of the regulations regarding opinion evidence.  The regulations in this regard are different for claims, like Engle's, filed before March 27, 2017, on the one hand, and for claims filed on or after March 27, 2017, on the other hand.  Specifically, the regulations applicable to claims filed on or after

March 27, 2017, ("the new regulations") changed the way the Commissioner considers medical opinion evidence and eliminated the provision in the regulations applicable to claims filed before March 27, 2017, ("the old regulations") that granted special deference to opinions of treating physicians.

The new regulations have been described as a "paradigm shift" in the way medical opinions are evaluated. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id*. But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id*.

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). And if "a treating source's medical opinions on the issue(s) of the nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under the old

11

regulations, where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors: the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id*. at §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

Under the new regulations, however, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The most important of these factors are the

12

"supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  As to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  And as to consistency, those regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors. *Id*.  But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

### A. Substantial evidence does not support the ALJ's RFC assessment.

The ALJ found in his report that Engle had the RFC to perform less than the full range of light work. *Admin. Tr.* at 739. Specifically, as mentioned above, *supra*, the ALJ found that Engle was "limited to occasional postural movements except never use ladders, ropes, or scaffolds." *Id.* She was further restricted from a concentrated exposure to hazards. *Id.*

Engle contends the ALJ's determination of the RFC was in error, due in part to the fact that the ALJ inadequately weighed the opinions of Drs. Gallagher and Nquyen, the only treating physicians offering medical opinions on Engle's physical functional limitations and mental limitations, respectively. *Doc. 13* at 14–15. This rejection of the only available medical opinions created "an evidentiary deficit," according to Engle. *Id.* Per Engle, the ALJ thus failed to obtain evidence to fill the evidentiary void, and thus committed a reversible error when he failed to point to evidence that supported his RFC determination. *Id.* Further, Engle alleges that the ALJ erred in his symptoms evaluations of Engle's conditions. *Id.* at 16. We agree with Engle that the ALJ did err in the determination of her RFC, compelling remand.

**B.  The ALJ incorrectly weighed the testimony of Engle's treating physician Gallagher.**

By way of background, treating physician Francis Gallagher, M.D.,

("Gallagher"), had treated Engle since 2011, and physically examined her several

times throughout the relevant time period of 2014 to 2018. *Admin Tr.* at 345–48,

1228.  Gallagher noted Engle's diagnosis as fibromyalgia, chronic fatigue, morning

stiffness, bipolar disorder, gastroparesis, and irritable bowel syndrome. *Id.* at 345.

Gallagher further opined that Engle's symptoms would frequently interfere with

her concentration and attention.  Per Gallagher, Engle could lift up to ten pounds

occasionally and she would miss more than three days a month due to her

condition. *Id.* at 348.  As noted above, *supra*, the ALJ stated that he afforded "little

weight" to the signed questionnaires of Gallagher, as Gallagher did not fill out the

forms completely. *Id.* at 744.  Additionally, the ALJ found that Gallagher's opinion

regarding Engle's limitations were inconsistent with the objective medical record,

Engle's prior substantial gainful activities, and her daily activities. *Id.*

"Medical opinions are statements from physicians and psychologists or other

acceptable medical sources that reflect judgments about the nature and severity of

[a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis,

what [a claimant] can still do despite impairment(s), and [a claimant's] physical or

mental restrictions."  20 C.F.R. § 404.1527(a)(2) (effective Aug. 24, 2012 to Mar.

26, 2017).  "In evaluating medical reports, the ALJ is free to choose the medical

opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009).  But "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).  For claims—like Engle's claims—filed before March 27, 2017, the regulations provide that if "a treating source's medical opinions on the issue(s) of nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the Commissioner "will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

Where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors including, the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id*. at § 404.1527(c)(2)–(c)(6).  The regulations provide that opinions on issues reserved for the Commissioner—such as whether a claimant is disabled and

a claimant's residual functional capacity—are not considered medical opinions under the regulations and are not entitled to any "special significance" based on the source of the opinion. 20 C.F.R. § 404.152(d).  Nevertheless, "[t]he ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled." *Morales*, 225 F.3d at 317.

"In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Id.* at 317–18 (quoting *Plummer*, 186 F.3d at 429).  The ALJ also may not disregard a treating physician's "medical opinion based solely on his own 'amorphous impressions, gleaned from the record and from his evaluation of [the claimant]'s credibility.'" *Id.* at 318 (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983)).

Further, the ALJ must "provide 'good reasons' in his decision for the weight he gives to the treating source's opinion." *Ray v. Colvin*, No. 1:13-CV-0073, 2014 WL 1371585, at *18 (M.D. Pa. Apr. 8, 2014) (quoting 20 C.F.R. § 404.1527(c)(2)).  "A decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any

17

subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting in turn *Soc. Sec. Rul. 96–2p,* 1996 WL 374188, *5 (1996)).  Thus, the "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).  Remand is appropriate where the ALJ fails to adequately explain his or her reasons for rejecting relevant evidence. *Ray,* 2014 WL 1371585, at *18.

Although the ALJ concluded that the limitations that Gallagher opined applied to Engle were not consistent with the clinical and diagnostic evidence of record, the ALJ cited to no direct evidence inconsistent with Gallagher's opinions. Rather, he stated that Gallagher's limitations were inconsistent with his statement that "the claimant was capable of low stress jobs," "the claimant's substantial gainful activity into 2012," and "the claimant's activities of daily living." *Admin. Tr.* at 744.  But the ALJ did not explain what these inconsistencies were, or how he made these determinations.  Because of this lack of explanation, it appears as though he impermissibly engaged in his own lay interpretation of the medical records. *See Burns v. Colvin*, 156 F. Supp. 3d 579, 588 (M.D. Pa. Dec. 30, 2015),

*report and recommendation adopted*, 156 F. Supp. 3d 579 (M.D. Pa. Jan. 13, 2016) ("In the Third Circuit, an ALJ may not reject a supported treating source medical opinion with only lay interpretations of medical evidence."); *Ralph v. Colvin*, No. 1:14-CV-01230, 2015 WL 2213576, at *16 (M.D. Pa. May 11, 2015) ("The administrative law judge engaged in her own lay analysis of the medical records. This was clear error.").

The entirety of the ALJ's discussion of Gallagher's medical opinions amounts to one short paragraph; absent a sufficiently stated rationale for discounting his opinions, we find that no substantial evidence supported the ALJ's RFC findings, and that the medical opinions of Dr. Gallagher were given insufficient weight.  Accordingly, we find that the ALJ's failure to do so frustrates meaningful judicial review and is grounds for remand. *See Fargnoli v. Halter*, 247 F.3d 34, 42 (3d Cir. 2001) ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such explanation is not provided.").

### C. The ALJ made errors in his evaluation of Engle's symptoms.

Engle also alleges that the ALJ erroneously found that Engle's symptoms were "not entirely consistent" with the objective evidence on record. *Id.* at 17.

Engle argues that this standard is inappropriate when applied to diagnoses of fibromyalgia, (*doc. 13* at 17), a kind of disability claim where "great weight must be given to a claimant's testimony regarding her subjective pain, especially when that testimony is supported by competent medical evidence." *Henderson v. Astrue*, 887 F. Supp. 2d 617 (W.D. Pa. 2012) (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 n. 10 (3d Cir.1997) ("Where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence.")).

However, it is within the purview of the ALJ to make credibility determinations. *See Davern v. Comm'r of Soc. Sec.*, 660 F. App'x 169, 174 (3d Cir. 2016) (recognizing that although the ALJ must carefully consider the claimant's statements about his or her symptoms, the ALJ is not required to credit them).  Furthermore, the ALJ need not totally accept or totally reject the claimant's statements, and may find all, some, or none, of the alleged symptoms are credible. SSR 96-7p, 1996 WL 374186 at *4.[5]  The ALJ may also find that a claimant's

---

[5] As of March 26, 2016, SSR 96-7p was superseded by SSR 16-3p.  The new ruling eliminates the term "credibility" from the Social Security Administration's policy guidance in order to "clarify that subjective symptom evaluation is not an examination of the individual's character."  SSR 16-3p, 2016 WL 1119029 at *1.  A comparison of these rulings reveals that there are few substantive changes.  Both rulings outline a two-step process to evaluate a claimant's subjective statements and identify the same factors to be considered in the ALJ's assessment of the intensity, persistence, and limiting effects of a claimant's symptoms.  Because SSR

allegations are not credible to a certain degree. *Id.* An ALJ's findings based on the credibility of a claimant are generally accorded deference. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his . . . assessment of the credibility of witnesses . . . ."). But an ALJ is not free to discount a claimant's statements about his or her symptoms or limitations for no reason or for the wrong reason. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). The Commissioner's regulations also provide a list of factors that the ALJ should consider when assessing the credibility of a claimant's allegations about his or her symptoms. 20 C.F.R. §404.1529(c)(3). These factors include: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; any factor that precipitates or aggravates the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her pain or other symptoms; any treatment, other than medication, the claimant receives or has received for relief of his or her pain or other symptoms; any measures the claimant uses or has used to relieve his or her pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour,

---

96-7p was in effect at the time of the ALJ's decision, we rely on that ruling. Our analysis would not, however, be different under the new ruling.

sleeping on a board, etc.); and any other factors concerning functional limitations

and restrictions due to pain or other symptoms. *Id*.  Finally, ALJs may reject

subjective testimony that is not found credible as long as there is an explanation

given for the rejection. SSR 96–7P(5); *Schaudeck v. Comm'r of Social Security*,

181 F.3d 429, 433 (3d Cir.1999).  Here, the ALJ found:

> The claimant has alleged experiencing symptoms of fatigue,
> diffuse body pain, and localized pain in her neck, shoulders,
> right hip, knees, lower back, and mid back.  Diagnostic testing
> pertaining to the claimant's lumbar spine and thoracic spine has
> indicated abnormal findings.  The claimant's medical records
> indicate the claimant was obese (i.e., has a body mass index
> equal to or greater than thirty) and that she was assessed with
> clinical examination findings of 18/18 tender points, diminished
> range of motion of the lumbar spine, tenderness of the thoracic
> spine and lumbar spine, tremors of the hands, mild crepitus of
> the knees, quadriceps atrophy, tenderness of the right sacroiliac
> joint, and diminished strength of the hips. She was also noted to
> have an inability to do finger to nose testing on one occasion.

*Admin. Tr.* at 741. (Internal citations omitted).  The ALJ further provided that:

> However, the claimant's medical records also contain a
> substantial amount of evidence that is not consistent with the
> claimant's allegations regarding her symptoms and limitations
> pertaining to her severe physical impairments. Specifically, the
> claimant's medical records indicate the claimant was assessed
> with clinical examination findings of a normal gait, full range
> of motion of the thoracolumbar spine, normal coordination,
> normal musculoskeletal range of motion, a negative straight leg
> raising test bilaterally, a negative Hoffman's sign bilaterally, no
> active synovitis, and +5/5 strength in all extremities and all
> peripheral muscle group.  The claimant's medical records also
> do not indicate the claimant was persistently noted to exhibit
> tremors in a clinical setting.  In fact, the claimant's medical

> records indicate her tremors were noted to have improved.
> Furthermore, a healthcare provider with whom the claimant
> treated also indicated the claimant was able to go from a seated
> to standing position without any assistance or difficulty and
> stand on her heels and toes.  Additionally, despite the
> claimant's alleged limitations regarding standing and walking,
> the claimant's medical records do not indicate that any
> healthcare provider prescribed the claimant any assistive
> ambulatory device prior to her date last insured.

*Id.* (Internal citations omitted).  Engle's testimony regarding "fatigue, diffuse body pain, and localized pain in her neck, shoulders, right hip, knees, lower back, and mid back," obesity, and "clinical examination findings of 18/18 tender points," remains uncontradicted in the record.  The ALJ, however, in determining whether an individual is disabled, must consider all of the individual's symptoms, "including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." *See* SSR 16-3p.  Complete consistency is not required, only reasonable consistency.  Absent contrary medical evidence, Engle's remaining alleged symptoms are reasonably consistent with her medical evidence and testimony. Therefore, the ALJ erred when he failed to provide a reason for rejecting Engle's subjective testimony regarding her symptoms.

Engle also argues that the ALJ erred when he factored in that Engle never required emergency or inpatient treatment for her mental health problems. *See doc. 13* at 18.  "It is well-established that an 'ALJ may rely on lack of treatment, or the

conservative nature of treatment, to make an adverse credibility finding, but only if the ALJ acknowledges and considers possible explanations for the course of treatment.'" *Wilson v. Colvin*, No. 3:13-cv-02401-GBC, 2014 WL 4105288, at * 11 (M.D. Pa. Aug. 19, 2014).  However, "[t]he adjudicator must not draw any inferences about an individual's symptoms and their functional effect from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7P(7).  Possible explanations may include the "inability to afford treatment and/or lack of access to free or low-cost medical services." *Id.*  In the instant matter, the ALJ did not at any length discuss any alternatives to inpatient or emergency services, and did not at any length discuss reasoning for declining to pursue such courses of treatment.

In the absence of any sufficiently stated rationales for discounting Engle's testimony, we find that the ALJ erred in his symptoms evaluation.  In sum, the ALJ's decision that Engle was not disabled within the meaning of the Social Security Act from June 4, 2014, to December 31, 2018, is not supported by substantial evidence.

**D. Engle's Remaining Claims of Error.**

Because we conclude that the Commissioner's decision must be vacated and the case remanded based on the ALJ's handling of Gallagher's opinion, we will not address Engle's remaining claims of error, namely the ALJ's mishandling of Engle's mental limitations factoring into the RFC. *See Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016) (declining to address other allegations of error because "[a] remand may produce different results on these claims, making discussion of them moot").

**E.  Engle's case should be remanded.**

The question then is whether we should remand the case to the Commissioner for further proceedings or we should award benefits to Engle, as she requests. *See doc. 13* at 21 (requesting that benefits be awarded).  We conclude that remand is the appropriate remedy.

Under sentence four of 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Thus, although a remand is often the appropriate remedy, the court may also enter an order awarding the claimant benefits. *See Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir.

2008) (remanding the case to the district court with directions to enter an order awarding the payment of benefits); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (same); *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984) (same). But an "award [of] benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22. Whether there has been excessive delay and/or prior remands also bears on whether to award benefits or remand for further proceedings. *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019). "Thus, in practice any decision to award benefits in lieu of ordering a remand for further agency consideration entails the weighing of two factors: First, whether there has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and second, whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id*.

Here, there has not been excessive delay in the litigation of Engle's claim, and we cannot say that substantial evidence on the record as a whole indicates that Engle is disabled and entitled to benefits. Rather, the ALJ's error here was failing to adequately explain his reasoning, which may be remedied on remand. Thus, we will remand the case to the Commissioner for further proceedings.

26

## VI.   Conclusion.

For the foregoing reasons, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  An appropriate order follows.

<u>**S/Susan E. Schwab**</u>
Susan E. Schwab
United States Magistrate Judge